UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **REED & REED, INC.,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | CIVIL NO. 07-136-P-H |
| | ) | |
| **GEORGE R. CAIRNS & SONS, INC.,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS

### INTRODUCTION

Where federal jurisdiction is premised on diversity of citizenship, the Federal Rules of Civil Procedure and caselaw allow a federal court to proceed only if its counterpart state court could proceed in the same circumstances. Maine state courts extend their jurisdiction as far as the Fourteenth Amendment permits. Applying Fourteenth Amendment principles, I conclude here that a Maine company can pursue in Maine its claim for breach of contract and related tort claims against a Massachusetts company headquartered in New Hampshire concerning an airport construction project also located in New Hampshire.

### FACTUAL AND PROCEDURAL BACKGROUND

George R. Cairns & Sons, Inc. ("Cairns") is incorporated in Massachusetts, but headquartered in New Hampshire. Aff. of Glenn Cairns ("Cairns Aff.) ¶ 2 (Docket Item 3). Its connections to Maine are these:

- It has qualified as a foreign corporation authorized to do business in Maine by appointing a registered agent for service of process since 1999. Id. ¶ 5; Pl.'s Reply, Ex. C (Docket Item 8-5).

- Over the past ten years, it has bid on three jobs in Maine, but none of the bids was accepted. Cairns Aff. ¶ 5.

- Between ten and fifteen years ago it sent a machine into Maine with two employees. Id.

- About four years ago it leased a machine for use in Maine. Id.

Cairns does not advertise in Maine, does not advertise in national publications that might find their way into Maine, and does not have any office or real or personal property in Maine. Id. ¶¶ 3-4, 7. It does have a website that people in Maine (and anywhere else) can access. Aff. of Arthur Cavanagh ("Cavanagh Aff.") ¶ 7 (Docket Item 8-2).

In 2005, Cairns successfully bid on a project to upgrade the aircraft parking apron at the former Pease Air Force (now Air National Guard) Base in Newington, New Hampshire. Cairns Aff. ¶¶ 9-10. Glenn Cairns, the President of Cairns, then contacted Arthur Cavanagh in Maine, by telephone and email, to invite Cavanagh's employer, Reed & Reed, Inc. ("Reed") to bid on the subcontract for paving work. Cavanagh Aff. ¶ 6.[1] Reed is a Maine corporation that engages in

---

[1] There is a dispute over who "initiated" the contacts. It seems to be not a factual dispute, but how to characterize the sequence of events. Cairns says that Reed was the initiator because Reed first notified Cairns that Reed planned to bid on the entire project and to invite Cairns to subcontract. As it turned out, Reed did not bid on the entire project; instead Cairns did. Cairns Aff. ¶¶ 9-10. Reed says that Cairns initiated the ultimate subcontractual relationship by pursuing Reed to bid only after an earlier planned subcontractor proved unsatisfactory. Cavanagh Aff. ¶ 6; Pl.'s Reply at
*(continued on next page)*

heavy construction at locations outside of Maine.  It is headquartered in Woolwich, Maine, and employs about 200 people.  Cavanagh Aff. ¶ 2.  Reed did bid, the parties reached agreement, and Glenn Cairns and Arthur Cavanagh exchanged several additional emails to negotiate the terms of the resulting subcontract.  Id. ¶ 6.  Glenn Cairns drafted and signed the subcontract in Cairns' Windham, New Hampshire office.  No Cairns representative ever traveled to Maine in connection with negotiating or executing the subcontract.  Cairns Aff. ¶ 11.  The subcontract includes a choice of law clause specifying that New Hampshire law governs any disputes, id., but it fails to specify a forum.  Cavanagh received all Cairns' communications at Reed's Woolwich, Maine office.  Cavanagh Aff. ¶ 6.  Jackson Parker, Reed's President, signed the subcontract at Reed's office in Woolwich, Maine.  Id. ¶ 9.

After the parties signed the subcontract, work began on the project in New Hampshire, and Arthur Cavanagh and Glenn Cairns continued to exchange phone calls and emails between New Hampshire and Maine.  Cavanagh Aff. ¶ 11.  There were also meetings at the worksite in New Hampshire. Cairns Aff. ¶ 12.  Eventually, a dispute arose with the project owner, the New Hampshire National Guard, over compliance with project specifications.  Cavanagh Aff. ¶ 14.  Reed and Cairns then entered into a Mutual Defense Agreement.  Cairns' lawyer in Concord,

---

3 (Docket Item 8).  Cairns, however, asks me to deduce from portions of an email from Glenn Cairns to Arthur Cavanagh ("We talked earlier and I indicated that we would like to maintain the [team] that got us the work, however, we may be running into some difficulties doing that. . . . If you're interested we would like to extend an invitation to bid.") that Reed must have asked for the subcontract earlier. Def.'s Reply ¶¶ 6-7 (Docket Item 9).  I find the characterization dispute irrelevant to my decision.

New Hampshire, and a lawyer for Reed based in the Virgin Islands (Reed has an affiliated construction company there) negotiated that agreement. Cairns Aff. ¶ 14; Cavanagh Aff. ¶ 18. Glenn Cairns signed the Mutual Defense Agreement at the Cairns office in Windham, New Hampshire. Cairns Aff. ¶ 14. Jackson Parker signed it at the Reed office in Woolwich, Maine. Cavanagh Aff. ¶ 16.

Ultimately, Reed sued Cairns in Maine Superior Court, asserting that Cairns has failed to pay Reed several hundred thousand dollars due for its work. Pl.'s Compl. ¶¶ 46-81 (Docket Item 1-6). Cairns removed the case, claiming federal jurisdiction under diversity of citizenship. Def.'s Notice of Removal (Docket Item 1). Cairns then filed this motion to dismiss under Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction over it in Maine.

## ANALYSIS

My jurisdiction over a defendant in a diversity of citizenship case is limited to that of the Maine Superior Court. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). Under Maine law, that jurisdiction extends as far as the Fourteenth Amendment permits a Maine court to assert its power, see, e.g., Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995) (listing cases). As the plaintiff, Reed bears the burden of making a *prima facie* showing of jurisdiction. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50-51 (1st Cir. 2002).[2]

---

[2] That means I consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts" necessary to support jurisdiction. Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). Properly proffered facts are treated as true and construed in a light most favorable to the plaintiff, but the plaintiff "may not rely on unsupported
*(continued on next page)*

Under Fourteenth Amendment jurisprudence, a court can assert two kinds of personal jurisdiction over a defendant: general and personal. If a defendant like Cairns has maintained continuous and systematic contacts with a particular state, it falls within the "general" jurisdiction of that state's courts, and those courts may exercise jurisdiction with respect to all matters, even those unrelated to the forum contacts. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). In the absence of general jurisdiction, a court can have "specific" jurisdiction, i.e., jurisdiction of a specific case, but only where the case "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Id.

*(A)   General Jurisdiction*

Registering to do business as a foreign corporation, as Cairns has done in Maine, is not enough to confer general jurisdiction. Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990). Cairns' other contacts with Maine (three unsuccessful bids; a lease four years ago; delivering a piece of equipment over ten years ago; a website accessible from Maine) likewise are insufficient, alone or in combination, to create a sufficient Maine presence. Other cases have denied general jurisdiction where there are far more forum connections than here. See, e.g., Noonan v. Winston Co., 135 F.3d 85, 93-94 (1st Cir. 1998) (dismissing for lack of personal jurisdiction a claim against a foreign corporation that conducted

---

allegations in [the] pleadings to make a prima facie showing of personal jurisdiction." Id. Rather, it must offer "affirmative proof." Id. I also consider facts offered by the defendant, to the extent that those facts are uncontradicted. See Daynard, 290 F.3d at 51 (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

regular and targeted business solicitations of forum companies; raised approximately $585,000 worth of business from a forum company; and sent an employee into the forum to conduct work-related activities); Glater v. Eli Lilly & Co., 744 F.2d 213, 214-15 (1st Cir. 1984) (dismissing for lack of personal jurisdiction a claim against a foreign corporation that advertised in trade journals that circulated in the forum state; employed eight sales representatives to work in the forum state; and sold products to wholesale distributors in the forum state).

### *(B)   Specific Jurisdiction*

The analysis for specific jurisdiction involves three components: "relatedness," "purposeful availment," and reasonableness. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 476 (1984). First, "the plaintiff's claim must be related to the defendant's contacts. . . . Second . . . the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances." Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). All three requirements must be satisfied, but a strong showing on reasonableness can "fortify a more marginal showing of relatedness and purposefulness." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 717 (1st Cir. 1996).

#### *(1) Relatedness*

To satisfy "relatedness," Reed's claims must "arise out of" or "relate to" Cairns' purposeful contacts with Maine. In contracts cases,[3] the existence of a

---

[3] This is a contracts case. Although the complaint contains a so-called negligence count and a tortious interference count, they both have to do with the performance of the subcontract and the
*(continued on next page)*

6

contract is not enough. Burger King Corp., 471 U.S. at 478. The relatedness requirement is not satisfied merely because a claim arose out of the parties' general relationship. The action must arise out of the specific contacts between the forum and the defendant. See Phillips Exeter Acad., 196 F.3d at 290; United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001). The First Circuit instructs district courts to evaluate the parties' "prior negotiations and contemplated future consequences, along with . . . [their] actual course of dealing." Swiss Am. Bank, 274 F.3d at 621. In particular, I must consider "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad., 196 F.3d at 289.

As the Supreme Court commented in Burger King, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." Burger King Corp., 471 U.S. at 476. In the absence of physical presence (and Cairns has no physical presence in Maine), the First Circuit "look[s] for some other indication that the defendant reached into the forum, such as mail or telephone contacts." Swiss Am. Bank, 274 F.3d at 622. Here, Glenn Cairns used telephone and email to invite Reed, in Maine, to bid on a subcontract for work in New Hampshire. That was a purposeful contact. The result was a subcontract, and later a Mutual Defense Agreement, the bases for this dispute. "Relatedness," therefore, is satisfied.

---

mutual defense agreement. I consider the personal jurisdiction question, therefore, under the contracts rubric only. See Lucerne Farms v. Baling Technologies, Inc., 226 F. Supp. 2d 255, 258-59 (D. Me. 2002). Cf. Jet Wine & Spirits, Inc., v. Bacardi & Company Ltd., 298 F.3d 1, 10 (1st Cir. 2002); Phillips Exeter Acad., 196 F.3d at 290-91. The result would be the same if I analyzed *(continued on next page)*

### *(2) Purposeful Availment*

Reed must also demonstrate that Cairns "purposefully availed" itself of the privilege of doing business in Maine, and that its contacts with Maine were "such that [it] should reasonably anticipate being haled into court there." Nowak, 94 F.3d at 716; Swiss American Bank, 274 F.3d at 624. This prong of the analysis requires attention to whether Cairns' connection with Maine was voluntary (not that of a third party) and whether Maine-based litigation was foreseeable as a result of the contact. See Ticketmaster-New York, 26 F.3d at 207; Nowak, 94 F.3d at 716.

Certainly, Cairns' contact with Maine was voluntary. It invited Reed in Maine to submit a bid on the New Hampshire subcontract.

I conclude also that Maine-based litigation was foreseeable as a result of this "reaching out." I do so because of the First Circuit decision in Nowak. There, a business traveler from a Massachusetts company patronized a hotel in Hong Kong and negotiated a corporate discount for all the Massachusetts company's employees. The following year, the Hong Kong hotel, without being asked to do so, faxed new rates and promotional materials to the Massachusetts company. After a series of exchanges, the Massachusetts company made reservations for several other employees. During the ensuing stay, the spouse of one of the employees drowned in the Hong Kong hotel swimming pool. Nowak, 94 F.3d at 711. The First Circuit ruled that Massachusetts could exercise personal jurisdiction over

---

jurisdiction under a tort theory.

8

the Hong Kong hotel in a wrongful death lawsuit arising out of the drowning.  Id. at 719.  In Nowak, the court found more forum-related activities than the parties have presented here (advertising in publications that circulated in Massachusetts; direct mail solicitation of previous guests living in Massachusetts; and listing the hotel in hotel guides used by Massachusetts travel agencies).  Id. at 717.  But before listing those other contacts, the First Circuit stated that the defendant's "unprompted" correspondence with the Massachusetts company, which resulted in the new reservations and the ensuing drowning, "was at least minimally sufficient to satisfy [the purposeful availment] requirement."  Id. at 716-17.  The Hong Kong hotel's correspondence seems no more unprompted than Cairns' phone calls and emails here.  According to the First Circuit:

> Even if it may be said that the materials were sent as part of an on-going relationship between the two companies that was originally instigated by [the Massachusetts company], the continued correspondence [from the Hong Kong hotel] to Massachusetts does not amount to the kind of unilateral action that makes the forum-state contacts involuntary."

Id. at 717.  "Whether prompted or unprompted," "[t]hat [the hotel] might have to defend itself in a Massachusetts court is certainly foreseeable based on its direct correspondence with [the Massachusetts company]."  Id.  Here Cairns, like the Hong Kong hotel, had direct (email) correspondence designed to generate a contractual relationship.  Whether or not there was a previous "on-going relationship . . . instigated by" Reed does not defeat satisfaction of the purposeful availment requirement.  See id.  Under Nowak, therefore, Maine-based litigation was "certainly foreseeable" as a result of Cairns' phone and email solicitation of

9

Reed in Maine. It is not a strong showing of purposeful availment, but it is enough.

This case is distinguishable from Telford Aviation, Inc. v. Raycom National, Inc., 122 F. Supp.2d 44 (D. Me. 2000), where the court concluded that minimum contacts were lacking. In Telford, Judge Singal found that the defendant's first contact with the forum, Maine, occurred only after it tried to charter an aircraft in Montgomery, Alabama "and was directed to contact Telford in Maine." Telford Aviation, 122 F. Supp.2d at 47. Judge Singal concluded that the defendant's contacts with Maine were, therefore, fortuitous, rather than voluntary, "result[ing] from [the plaintiff's] decision to handle contracts and to schedule charter flights originating in Alabama from its Waterville, Maine offices." Id. at 47. Here, in contrast, Cairns purposefully solicited a Maine corporation to perform a job in New Hampshire. The contact was not fortuitous; it resulted from an affirmative choice by Cairns to reach out to and contract with Reed, rather than with the subcontractor Cairns had initially planned to use.

### *(3) Reasonableness*

If the contacts question is close, the reasonableness factors "may tip the constitutional balance." Nowak, 94 F.3d at 717. The reasonableness factors are: (a) the defendant's burden of appearing; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the judicial system's interest in obtaining the most effective resolution of the controversy; and (e) the common interests of all sovereigns in

promoting substantive social policies. Id. Here, the reasonableness factors favor Reed.

*(a) burden of appearance on Cairns.* Burden of appearance matters only when a defendant can demonstrate that exercise of jurisdiction would be "onerous in a special, unusual, or other constitutionally significant way." Id. at 718 (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)). Cairns acknowledges that it has made no such showing here. Def.'s Mot. to Dismiss at 9 (Docket Item 5).

*(b) interests of the forum.* Maine clearly has an interest in adjudicating this dispute. Although the physical work was in New Hampshire, Maine has an interest in providing its citizens with a convenient forum in which to assert their legal claims, here the contract and tort claims arising from harms allegedly inflicted by an out-of-state actor. Nowak, 94 F.3d at 718. See also Lucerne Farms, 226 F. Supp.2d at 261.

*(c) Reed's convenience.* Cairns concedes that as a plaintiff, Reed's choice of forum is entitled to deference. Def.'s Mot. to Dismiss at 10.

*(d) the administration of justice.* "This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy." Nowak, 94 F.3d at 718. Usually it is a "wash." Id. Cairns suggests logistical issues arising from the fact that the project site ("of which a view will surely be necessary") and likely non-party witnesses, National Guard members, are located in New Hampshire. Def.'s Mot. to Dismiss at 10. Reed points out, however, that the federal courthouse in Portland, Maine is no further from the base construction

11

site than is the federal courthouse in Concord, New Hampshire. Cavanagh Aff. ¶ 20; Pl.'s Reply at 11.[4] Cairns also points to the subcontract's choice of law clause, specifying New Hampshire law. Def.'s Mot. to Dismiss at 10. But a District Court in Maine can apply New Hampshire law and vice versa, cf. Nowak, 94 F.3d at 718-19; Munis v. East Orange Bd. Of Water Comm'rs, 2002 WL 1162811 (D. Me. May 31, 2002); it is not an unusual occurrence. In this case, therefore, like most, the administration of justice factor has no impact.

*(e) common interests of all sovereigns in promoting social policies.* Cairns says that "policy would be best served if this dispute were adjudicated in a forum convenient to, and having jurisdiction over, the Guard," whose facility is the subject of the dispute. Def.'s Mot. to Dismiss at 10. Frankly, I do not understand the import of that argument. Instead, I conclude that neither Maine nor New Hampshire has social policies that would be affected by which forum decides this dispute.

Thus, factors *(b)* and *(c)* favor Reed; the other factors have no impact.

## CONCLUSION

Reed satisfies all three requirements for specific jurisdiction: relatedness, purposeful availment, and reasonableness. It has made a *prima facie* case of personal jurisdiction over Cairns for disputes arising out of these two contracts.

---

[4] Cairns says that all the National Guard personnel "involved with the Project were either based in Concord or at the Air Force Base itself." Cairns Aff. ¶ 16. Neither party suggests what number of National Guard employees would need to be called as witnesses or how I can determine where they are located. As reflected in text, those at the base itself are as close to Portland, Maine, as to Concord, New Hampshire.

12

The defendant's motion to dismiss is **DENIED**.

**SO ORDERED.**

**DATED THIS 1ST DAY OF NOVEMBER, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**
